IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-218-JLH-EGT |
| | ) | |
| TRANSWORLD SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Presently before the Court is the motion of Defendant Transworld Systems, Inc. ("Defendant" or "Transworld") for summary judgment. (D.I. 41). For the reasons set forth below, the Court recommends that Defendant's motion be GRANTED.

## I.    BACKGROUND

*Pro se* Plaintiff David Neal incurred a debt with Christiana Care Health Services ("ChristianaCare") related to an emergency room visit in January 2023. (*See* D.I. 42 ¶ 1; D.I. 43 ¶ 11; D.I. 25 at TSI00024-283). On September 19, 2023, ChristianaCare assigned the debt to Transworld for collection. (D.I. 42 ¶ 2; D.I. 43 ¶ 12). On September 22, 2023, Transworld requested that a notice letter be sent to Plaintiff's address regarding his outstanding debt. (D.I. 42 ¶ 4; D.I. 43 ¶ 14; *see also* D.I. 25 at TSI00250 (indicating letter request on "09/22/2023")). Although disputed by Plaintiff, the letter was apparently sent to Plaintiff's address on September 24, 2023. (D.I. 42 ¶¶ 15-17; D.I. 43 ¶¶ 24-26; *see also* D.I. 25 at TSI00250 (indicating letter sent on "09/24/2023") & TSI00284-6 (notice letter addressed to Mr. Neal and dated September 24, 2023)). According to the Complaint, Transworld thereafter sent Plaintiff seven text messages regarding his outstanding debt between October 2024 and January 2025. (D.I. 1, Ex. A ¶¶ 11-17; *see also* D.I. 25 at TSI00304-10).

Believing that the text messages were somehow illegal, on January 17, 2025, Plaintiff filed this case originally in the Delaware Court of Common Pleas, asserting against Transworld two claims for violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq*. ("TCPA") – stylized as "Use of Automated Dialing System to a Cellular Line" (Count I) and "Artificial Voice/Prerecorded Messages" (Count II) – and one claim for violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), stylized as "Failure to Identify Debt" (Count III).  (D.I. 1, Ex. A).[1]  Transworld removed the case to this Court on February 24, 2025.  (D.I. 1).  Plaintiff thereafter stipulated to dismiss Count II with prejudice (D.I. 33), which the Court granted on July 14, 2025 (D.I. 34).

On January 23, 2026, Transworld filed the present motion for summary judgment, arguing that (1) Plaintiff's remaining TCPA claim fails because Plaintiff lacks evidence that Transworld used an "automated telephone dialing system" to send the disputed text messages and (2) Plaintiff's FDCPA claim fails because Transworld's initial communication to Plaintiff was a written notice containing the disclosures required by 15 U.S.C. § 1692g(a).  (D.I. 41 & 42). Plaintiff opposed, arguing that genuine issues of material fact exist as to (1) the type of equipment and processes used by Transworld to send the text messages at issue and (2) whether Transworld actually sent the notice letter to Plaintiff.  (D.I. 45).  Briefing concluded on March 20, 2026. (D.I. 47).

---

[1]    Plaintiff has filed at least three other *pro se* civil actions alleging violation of the TCPA for unwanted calls and text messages.  *See Neal v. Cellco P'ship*, C.A. No. 24-1358-JLH-EGT (D. Del.); *Neal v. Propymax LLC*, C.A. No. 25-776-JLH-EGT (D. Del.); *Neal v. Timberline Tax Grp., LLC*, C.A. No. 20-135-CSMW (E.D. Pa.).  Plaintiff's lawsuits – stemming from allegedly illegal text messages and phone calls – border upon frivolous and amount to a significant waste of Court and party resources.  (*See* D.I. 25 at TSI00292 (Mr. Neal threatening his debt collector, "wow you really like being sued.  1500 for each text you send")).

**II.    LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show[] that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An assertion that a fact is not genuinely disputed must be supported by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the non-movant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) ("bare assertions, conclusory allegations, or suspicions" are insufficient to create a genuine issue of material fact). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322 (1986). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III.   DISCUSSION

### A.   Telephone Consumer Protection Act (Count I)

As to Plaintiff's claim under the TCPA, Transworld argues that summary judgment is appropriate because "all the evidence in the record makes clear the texts were specific, targeted to plaintiff, and, pursuant to binding Third Circuit authority, did not use a random or sequential number generator to produce or store telephone numbers." (D.I. 42 at 2-3 (citing *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 880 (3d Cir. 2022))). In response, Plaintiff argues that Transworld misapplies *Panzarella* and that fact issues exist because Transworld's (1) "records show additional phone numbers associated with Plaintiff that were appended from a third-party source (e.g., Neostar)," (2) "account notes reflect a skip-trace request and 'dedupe phone' changes to multiple phone fields" and (3) "production lists approximately six to seven different phone numbers associated with Plaintiff." (D.I. 45 at 6-8). Plaintiff further argues that summary judgment is inappropriate because Transworld apparently refused to produce "key materials" regarding its "systems, policies, and records related to dialing/texting equipment, dialing modes, and compliance materials." (*Id*. at 8). The Court ultimately agrees with Transworld.

The TCPA generally makes it unlawful for any person using an "automatic telephone dialing system" to call any telephone number within the United States "for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an "automatic telephone

dialing system" as equipment that has the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such numbers." *Id*. at § 227(a)(1). To qualify as an "automatic telephone dialing system" within the meaning of the statute, "a device must have the capacity either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 395 (2021). And to violate the TCPA, a party must actually employ the automatic telephone dialing system's capacity to generate random or sequential telephone numbers. *See Panzarella*, 37 F.4th at 881-82 (affirming grant of summary judgment in favor of defendant where plaintiff "identified no evidence that even suggests [defendant debt collector] called them in anything but a targeted manner").

As in *Panzarella*, Plaintiff here has offered no evidence suggesting that the seven disputed text messages were sent to him "in anything but a targeted manner." *Id*. at 882. Plaintiff does not dispute that he incurred a debt with ChristianaCare. (D.I. 42 at 3 ¶ 1). Nor does he dispute that Transworld, the assigned debt collector, specifically contacted his (and only his) telephone number via text message regarding his outstanding ChristianaCare debt. (*Id*. at 7-8 ¶¶ 27-35; *see also* D.I. 25 at TSI00292 ("TSI a debt collector, will send you account updates regarding your CHRSCARE acct")). Whether the equipment used by Transworld had the capacity to store or produce telephone numbers using a random or sequential number generator is irrelevant. As the Third Circuit made clear in *Panzarella*, the capacity to function as an "automatic telephone dialing system" must actually be used to dial random or sequential numbers. *See Panzarella*, 37 F.4th at 881 ("[F]or a call to violate section 227(b)(1)(A), that call must employ either an ATDS's capacity to use a random or sequential number generator to produce telephone numbers to be dialed or its capacity to use a random or sequential number generator to store telephone numbers to be

dialed."); *see also Anthony v. Nat'l Republican Cong. Comm.*, No. 24-3052, 2025 WL 2741798, at *2 (3d Cir. Sept. 26, 2025); *Perrong v. Montgomery Cnty. Democratic Comm.*, No. 23-2415, 2024 WL 1651274, at *1-2 (3d Cir. Apr. 17, 2024). Where, as here, there is no evidence that Plaintiff was contacted in anything but a targeted manner, his TCPA claim must fail.

Because Plaintiff has offered nothing more than a mere "scintilla of evidence" that Transworld used an "automatic telephone dialing system" to contact him regarding his outstanding debt, *Anderson*, 477 U.S. at 252, the Court recommends that Transworld's motion for summary judgment be granted as to Plaintiff's claim under the TCPA.

### B.      Fair Debt Collections Practices Act (Count III)

As to Plaintiff's claim under the FDCPA, Transworld also seeks summary judgment because no genuine issue of material fact exists as to whether Transworld "timely sent a letter to plaintiff containing all the disclosures required by § 1692g(a) and it was not returned undeliverable." (D.I. 42 at 2 (citing *Slavish v. I.C. Sys., Inc.*, No. 3:20-CV-403, 2023 WL 4504593, at *5-7 (M.D. Pa. June 12, 2023), *report and recommendation adopted*, 2023 WL 6881791 (M.D. Pa. Oct. 18, 2023)). In opposing summary judgment, Plaintiff insists that a fact issue exists as to whether the notice letter was sent because (1) Plaintiff swears that he did not receive such notice, (2) Transworld's internal documentation evidencing such mailing is not conclusive and (3) Transworld allegedly withheld USPS Intelligent Mail barcode data that would "definitely show whether a letter was mailed and whether it was returned undeliverable." (D.I. 45 at 2 & 4-6). Again, the Court agrees with Transworld.

The FDCPA requires that debt collectors provide consumers with written notice of various information "[w]ithin five days after the initial communication" regarding the outstanding debt.[2]

---

[2]     Plaintiff does not dispute that the notice letter (D.I. 25 at TSI00284-86) contained the information required by the FDCPA, including "(1) the amount of the debt; (2) the name

15 U.S.C. § 1692g(a).  The FDCPA "requires only that a Notice be 'sent' by a debt collector.  A debt collector need not establish actual receipt by the debtor." *Slavish*, 2023 WL 4504593, at *6 (quoting *Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999)); *Reed v. IC Sys., Inc.*, No. 3:15-279, 2017 WL 89047, at *5 (W.D. Pa. Jan. 10, 2017); *Rogozinski v. NCO Fin. Sys., Inc.*, No. CIV.A. 11-2594, 2012 WL 5287896, at *3 (E.D. Pa. Oct. 25, 2012); *Webb v. Envision Payment Sols., Inc.*, No. CIV.A. 10-1414, 2011 WL 2160789, at *4 (W.D. Pa. May 31, 2011); *see also* 15 U.S.C. § 1692g(a) (requiring debt collectors to "***send*** the consumer a written notice" (emphasis added)).

Plaintiff again has failed to offer even a mere "scintilla of evidence" that the disputed notice letter was not actually sent.  Transworld's internal records, supported by an affidavit from Transworld's Director of Consumer Affairs Mr. Erik Podbutzky (D.I. 43), demonstrate that the notice letter was sent to Plaintiff's address[3] on September 24, 2023.  As explained by Mr. Podbutzky, Transworld placed a request on September 22, 2023 with its mailing vendor RevSpring to send the notice letter to Plaintiff's address.  (*See* D.I. 43 ¶¶ 14, 22, 23 & 28-30; *see also* D.I. 25 at TSI00250 (indicating "#7200" letter request made on "09/22/23") & TSI00284-6 (notice letter addressed to Plaintiff and stamped "P7200")).  On September 24, 2023, RevSpring

---

of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."  15 U.S.C. § 1692g(a)(1)-(5).

[3]     Plaintiff admitted that he has resided at address used by Transworld from September 1, 2023 through present.  (*Compare* D.I. 29 at 2, *with* D.I. 25 at TSI00284-86).

confirmed with Transworld that the letter was sent to Plaintiff's admittedly correct address. (*See* D.I. 43 ¶¶ 24-26; *see also* D.I. 25 at TSI00250 (indicating "#7200" letter sent on "09/24/23") & TSI00284-86 ("P7200" notice letter dated "September 24, 2023")). Mr. Podbutzky explained that RevSpring would have notified Transworld if the letter was returned undeliverable and that no such notification was received for the September 24, 2023 notice letter. (D.I. 43 ¶¶ 19 & 27). And Mr. Podbutzky also explained that Transworld's mailing system has been used "for years and is regularly tested to ensure maximum functionality." (*Id.* ¶ 21).

In response to Transworld's motion and supporting evidence, Plaintiff only provided his "sworn denial" that he ever received the September 24, 2023 notice letter. (D.I. 45, Neal Decl. ¶ 2 ("I understand Defendant claims it sent me an initial validation notice letter dated September 24, 2023 (often referenced in Defendant's papers as a '7200' letter). I did not receive any such validation notice letter.")). But Plaintiff's sworn denial is of no import because the debt collector need not establish actual receipt by the debtor. *See Slavish*, 2023 WL 4504593, at *6; *Reed*, 2017 WL 89047, at *5; *Rogozinski*, 2012 WL 5287896, at *3; *Webb*, 2011 WL 2160789, at *4. Nor is Transworld's alleged failure to produce "USPS Intelligent Mail barcode data" sufficient to create a genuine issue of material fact. Plaintiff cites no provision of the FDCPA or any case law that imposes such a requirement on a debt collector's notice letter. In short, Transworld sent Plaintiff the required notice letter, and Plaintiff offered no evidence to the contrary. As such, Plaintiff's FDCPA claim fails. *See Slavish*, 2023 WL 4504593, at *6 ("[T]he affidavit of in-house counsel is fully supported by contemporaneous business records which show that a proper notice was mailed to Slavish and was never returned as undeliverable. This is all that the law requires.").

The Court therefore recommends that Transworld's motion for summary judgment be granted as to Plaintiff's claim under the FDCPA.

## IV.  CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's motion for summary judgment (D.I. 41) be GRANTED.

The parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation.  See FED. R. CIV. P. 72(b)(2); see also FED. R. CIV. P. 6(d).  Any responses to the objections shall be filed fourteen (14) days after the objections.  Objections and responses are limited to ten (10) pages.  The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights.  *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1.  The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated:  June 10, 2026

_____
UNITED STATES MAGISTRATE JUDGE

9